IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

WILLIAM D. LUKE,                    )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 )        Case No. 12-cv-608-TLW
                                    )
CAROLYN W. COLVIN,[1]               )
Acting Commissioner of Social Security, )
                                    )
        Defendant.                  )

## OPINION AND ORDER

Plaintiff William D. Luke seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for supplemental security income benefits under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. # 30). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a twenty-seven year old male, applied for Title XVI benefits on January 7, 2009, alleging a disability onset date of June 21, 2008.[2] (R. 115-17). Plaintiff alleged that he was unable to work due to "[a]ttention deficit disorder – bipolar disorder – arterial venous malformation of the visual cortex of the brain, hypertension, [and] migraines." (R. 133). Plaintiff's claims for benefits were denied initially on June 2, 2009, and on reconsideration on September 22, 2009. (R. 51, 52, 53-56, 57-59). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held a hearing on May 17, 2010. (R. 23-50). The ALJ issued a decision on August 23, 2010, denying benefits and finding plaintiff not disabled. (R. 9-22). The Appeals Council denied review, and plaintiff appealed. (R. 1-6).

**The ALJ's Decision**

The ALJ found that plaintiff had not engaged in any substantial gainful activity since January 7, 2009, his application date. (R. 14). The ALJ determined that plaintiff had the following severe impairments: "Attention Deficit Hyperactivity Disorder, Bipolar Disorder, alcohol and marijuana abuse, intracranial Arterio-Venous Malformation, hypertension,

---

[2] 20 C.F.R. §416.305 provides that a claimant must file an application in order to become eligible for benefits. 20 C.F.R. § 416.330 states that the earliest benefits can be paid is "the month following the month that you first meet all the requirements." Therefore, even though plaintiff alleged a disability onset date of June 21, 2008, the earliest date that plaintiff could have received benefits was February 2009.

narcissistic personality disorder with schizoid traits, and headaches/cephalgia." (R. 14). Plaintiff's complaints of "migraines, vision difficulties, and impairments to his knees and hip" were "not medically determinable based upon the existing medical records;" therefore, the ALJ found that these were not severe impairments. Id. Plaintiff did not meet or medically equal a listing. (R. 14-15). Applying the "paragraph B" criteria, the ALJ concluded that plaintiff had moderate difficulties in activities of daily living; social functioning; and concentration, persistence, and pace when he was using drugs. (R. 15). Plaintiff's limitations in these areas were mild to moderate when he was clean and sober. Id.

The ALJ then reviewed the medical evidence and the testimony from the ALJ hearing to determine plaintiff's residual functional capacity. (R. 16-18). The ALJ concluded that plaintiff was able to perform medium work with the following restrictions: (1) plaintiff was limited to simple tasks; (2) plaintiff was to have only superficial contact with coworkers and supervisors; and (3) plaintiff could have no contact with the public. (R. 16). With those limitations, plaintiff was unable to return to his past relevant work as a fast food employee. (R. 18). Relying on the vocational expert's testimony, the ALJ found that plaintiff could perform other work, such as a hand packer, a janitor, a bench assembler, a groundskeeper, and a fruit picker. (R. 18-19). Accordingly, the ALJ found plaintiff not disabled.

## ANALYSIS

On appeal, plaintiff raises three points of error. (Dkt. # 17). First, plaintiff argues that the ALJ made multiple errors in assessing plaintiff's residual functional capacity. Id. Second, plaintiff argues that those errors extended to the ALJ's findings regarding plaintiff's ability to perform other work. Id. Finally, plaintiff contends that the ALJ failed to properly assess plaintiff's credibility.

The Court has carefully read the briefs and the entire administrative record. After reviewing the applicable case law and regulations, the Court finds that plaintiff's allegations of error do not warrant reversal, except for plaintiff's claim that the ALJ erred in assessing plaintiff's headaches as part of the residual functional capacity assessment. One of plaintiff's arguments is that the ALJ found plaintiff's cephalgia (headaches) to be a severe impairment at step two but failed to assess any limitations related to those headaches at step four, including accommodations for absences. (Dkt. # 17). Plaintiff testified at the ALJ hearing that he had "migraine-like headaches" once a week, and he testified that those headaches were due to "stressful situations, when I'm dealing with people on a regular basis." (R. 32).

The Commissioner argues that plaintiff bears the burden of proof and has failed to establish disabling limitations. (Dkt. # 21). The Commissioner contends that the record establishes only a diagnosis of AVM and headaches that can be treated with medication, when plaintiff takes it. Id. This evidence is insufficient, the Commissioner argues, to establish a disability. The Court also held a hearing on February 5, 2014, to hear argument on this issue. (Dkt. # 29). In addition to the arguments set forth in the briefing, the Commissioner argued that the ALJ's findings that plaintiff should be limited to simple tasks and no contact with the public addressed all of the limitations stemming from plaintiff's headaches. (Dkt. # 29, Hearing, James David Sides). The Commissioner argued that these limitations reflected plaintiff's own testimony and would decrease the triggers for plaintiff's headaches. Id.

At step two, the ALJ must determine whether the claimant has an "impairment or combination of impairments which significantly limits [his] ... ability to do basic work activities." 20 C.F.R. § 416.920(c). This step requires only a *de minimis* showing of impairment. See Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) (citing Williams v. Bowen, 844

4

F.2d 748, 751 (10th Cir. 1988)). However, the claimant must show more than the mere presence of a condition or ailment. See Bowen v. Yuckert, 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (holding that step two designed to identify, "at an early stage," those slight impairments that would be unlikely to result in a finding of disability even if age, education, and experience were considered). The burden of proof is on the claimant to "make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities. . . ." Williams, 844 F.2d at 751. Unless the claimant makes a *de minimis* showing of medical severity, the evaluation process ends and the claimant is determined not disabled. See id.

At step four, the ALJ must determine plaintiff's residual functional capacity, which reflects the most a claimant can do despite his limitations. See 20 C.F.R. § 416.945(a)(1); SSR 96-8p. The ALJ must consider all of a claimant's medically determinable impairments, whether they are severe or not severe. See 20 C.F.R. § 416.945(a)(2). The Tenth Circuit has held that "failure to consider all of the impairments is reversible error." Salazar v. Barnhart, 468 F.3d 615, 621 (10th Cir. 2006). The residual functional capacity findings "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p.

The ALJ identified plaintiff's "headaches/cephalgia" as a severe impairment but determined that plaintiff's migraines were not a medically determinable impairment "based upon the existing medical records" because plaintiff "has no records from a neurologist or other headache specialist. There are no prescription medications or even over-the-counter drugs in a listing of medications." (R. 14). At step four, the ALJ noted plaintiff's claim that he had "regular

headaches every day and migraines once a week due to stress. (R. 16). Plaintiff cited working as a counter clerk at a fast food restaurant as a source of stress. Id. The ALJ also noted that plaintiff reported to Dr. Nodine that his migraines were not the "main reason" for his disability application and that Dr. Gourd found no limitations other than the unsupported stand/walk limitation. (R. 17-18).

The ALJ did discuss plaintiff's own statements regarding his headaches as part of the residual functional capacity assessment. (R. 16). Plaintiff stated that "[h]e has regular headaches every day." Id. In discussing plaintiff's activities, the ALJ noted that plaintiff spent a majority of his time "playing video games, visiting web sites on the Internet, and communicating with people online." Id. The ALJ also discussed the medical opinions, none of which imposed any limitations or made any findings regarding plaintiff's "regular" headaches.[3] Id.

Most of the residual functional capacity analysis, however, focused on plaintiff's mental health issues. (R. 16-18). The ALJ discussed plaintiff's testimony about his attention deficit disorder, his bipolar disorder, and his activities of daily living. (R. 16). The ALJ relied on the medical records regarding plaintiff's mental health, including the mental status examination, plaintiff's self-report during the physical consultative examination, and plaintiff's therapy records. (R. 16-17).

Ultimately, the ALJ determined that plaintiff could perform simple tasks, engage in superficial contact with coworkers and supervisors, and have no contact with the public. (R. 16). Although the Commissioner argued persuasively that these limitations addressed plaintiff's headaches, insofar as they would reduce the stress that triggered plaintiff's headaches, the ALJ's decision does not connect those limitations to plaintiff's severe impairment of

---

[3] The ALJ does not specifically address the lack of findings, but his discussion of the medical evidence demonstrates that the ALJ considered all of the medical opinions.

"headaches/cephalgia." Rather, the ALJ's discussion of plaintiff's residual functional capacity relies heavily on the evidence of plaintiff's mental impairments, which caused plaintiff to experience mild to moderate difficulties in social functioning and concentration, persistence, and pace. (R. 15-17). The ALJ's decision reflects his impression of how those limitations and the medical records impacted plaintiff's ability to function. Id. Any explanation for the impact of plaintiff's headaches on his residual functional capacity is either absent or unclear; therefore, the Court must remand. See, e.g., Timmons v. Barnhart, 118 Fed.Appx. 349, 353 (10th Cir. 2004) (unpublished)[4] (reversing and remanding where an ALJ did not include any limitations at step five for a severe impairment because "[a]t the very least, the ALJ should have explained how a 'severe' impairment at step two became 'insignificant' at step five.").

## CONCLUSION

For the reasons stated above, the decision of the Commissioner finding plaintiff not disabled is **REVERSED AND REMANDED** for further proceedings.

On remand, the ALJ should explain the link between the evidence and his specific residual functional capacity findings regarding the limitations caused by plaintiff's headaches. If the ALJ believes that additional medical evidence is required, he may order further examination.

SO ORDERED this 20th day of February, 2014.

_____
T. Lane Wilson
United States Magistrate Judge

---

[4] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."